# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANTHONY BITTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:04CV00478 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Anthony Bittle seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claim for Disability Insurance Benefits. The Commissioner's denial decision became final on April 23, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on September 20, 1959, and was 42 years of age on his alleged onset date of disability. He has a 10th grade education and past relevant work as an upholsterer, a truck driver, and an assembly line worker. Plaintiff alleges disability as of April 18, 2002 (amended), due to depression, a back problem, carpal tunnel syndrome ("CTS"), and a knee problem.

## The Administrative Proceedings

Plaintiff filed an application for Disability Insurance Benefits on May 30, 2002, alleging disability due to depression, a back problem, CTS and a knee problem. His claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held in Greensboro, North Carolina, on July 18, 2003, before ALJ Charles F. Biscoe, and a decision denying benefits was issued on January 8, 2004. Plaintiff filed a request for review, and on April 23, 2004, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the disability insured status requirements of the Social Security Act on April 18, 2002, his alleged onset date of disability, and continued to meet them through December 31, 2003, but not thereafter.

2. Plaintiff has not engaged in substantial gainful activity since April 18, 2002, his alleged onset date of disability.

3-4. Plaintiff suffers from "severe" depressive, back, neck and wrist conditions, but does not have an impairment, or combination of impairments, that meet or equal one listed in Appendix 1, Subpart P, Regulations Number 4.

5. Plaintiff's allegations regarding his symptoms and limitations are not credible.

-2-

Case 1:04-cv-00478-JAB   Document 13   Filed 06/22/05   Page 2 of 14

6-7. Considering all of the medical evidence in the record regarding the severity of Plaintiff's impairments, Plaintiff retains the residual functional capacity to perform a significant range of light work with a sit/stand option, so long as he does not have to engage in repetitive hand motions involving repetitive movements of the wrist; is limited to simple, routine, repetitive tasks; and is not required to interact with the public.

8. Plaintiff is unable to perform his past relevant work as an upholsterer, a truck driver, or an assembly line worker.

9-11. Plaintiff is a "younger" individual with a "limited education" who is literate and able to communicate in English. Furthermore, Plaintiff is able to perform a significant range of light, unskilled tasks on a sustained basis.

12. Although Plaintiff is unable to perform a full range of light work, relying on the testimony of a Vocational Expert ("VE"), and using Medical-Vocational Rule 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that Plaintiff is capable of performing.

13. Plaintiff was "not disabled," as defined by the Social Security Act, at any time through January 8, 2004, the date of the ALJ's decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must

review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 404.1520 (2004). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

-4-

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on April 18, 2002, his alleged onset date of disability, and continued to meet them through, but not after, December 31, 2003. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 18, 2002, his alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffers from "severe" depressive, back, neck, and wrist conditions, but that he does not have an impairment, or combination of impairments, that meet or equal the ones listed in Appendix 1, Subpart P, Regulations Number 4.

At step four of the sequential evaluation, the ALJ found that Plaintiff is able to perform light work with a sit/stand option, so long as he does not have to engage in repetitive hand motions involving repetitive movements of the wrist; is limited to simple, routine, repetitive tasks; and is not required to interact with the public. Accordingly, the ALJ found that Plaintiff is unable to perform his past relevant work as an upholsterer, a truck driver, or an assembly line worker. Moving on to step five, the ALJ found that Plaintiff is a "younger individual," with a "limited education," who is nevertheless literate and understands English. Accordingly, the ALJ found that, considering the testimony of the VE, and using Medical-Vocational Rule 202.18 as a framework for decision making, Plaintiff was "not disabled," as defined by the Social Security Act at any time through January 8, 2004, the date of the ALJ's decision.

In this action for judicial review, Plaintiff first argues that the ALJ committed reversible error by failing to adequately evaluate Plaintiff's cognitive abilities. (Pleading No. 10, Pl.'s Br. Supp. Mot. for Summ. J., at 4-6.) Specifically, Plaintiff's counsel points to Plaintiff's poor performance in school, and contends that the ALJ should have ordered that Plaintiff be given an IQ test. The Court finds this argument to be unpersuasive in light of the full evidentiary record. *Id, citing* tr. at 132-42.

Plaintiff testified at the hearing that, despite his limited education, he is literate, speaks English, and has been able to maintain steady employment as an upholsterer, a truck driver, and an assembly line worker. Tr. at 38, 59-60, 109; *see also Cauthen v. Finch*, 426 F.2d 891 (4th Cir. 1970)(a long-standing impairment is not disabling if the claimant was able to work regularly for many years while affected to virtually the same extent as at the present). As the Commissioner points out, there is no evidence in the record that Plaintiff's IQ is of Listing level, or that Plaintiff qualified for special education classes. (Pleading No. 12, Mem. in Supp. of the Comm'r Decision, at 4-8.) Furthermore, the ALJ evaluated in detail any additional mental limitations caused by Plaintiff's "severe" mental impairment of depression, and addressed the limitations caused by such impairment with a finding that Plaintiff should be limited to simple, routine, repetitive work and that Plaintiff should not have contact with the general public. (Tr. at 54-60.)

Finally, the Court notes that it is *Plaintiff*, and not the Commissioner, who "bears the burden of *production and proof* during the first four steps of the inquiry." *Pass v. Chater*, 65

-6-

F.3d 1200, 1203 (4th Cir. 1995)(emphasis added), *citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1982); *see also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.")(footnotes omitted). Therefore, Plaintiff, and not the ALJ, bore the burden of requesting or providing the additional medical records if he believed that the record did not adequately reflect Plaintiff's mental impairments.

Plaintiff's final argument before the Court is that the ALJ committed several prejudicial errors at step five of the sequential evaluation. Specifically, Plaintiff argues that the ALJ's hypothetical questions to the VE were flawed in at least four separate ways. (Pleading No. 10 at 6-17.)

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). In this case, the ALJ told the vocational expert to consider a younger individual with a 10th grade education who was able to lift light objects up to twenty pounds. (Tr. at 60.) Furthermore, the ALJ said such individual's:

> [S]itting and standing would be somewhat limited. He would need the option to change position during the workday from time to time – not frequently but from time to time. He has bimanual dexterity but he should not do repetitive jobs that require constant bimanual dexterity throughout the workday. But he can grasp and handle objects, periodically. It – he would be limited by his

-7-

depression and side effects to simple, routine, repetitive activity and should not be required to work with the general public.

*Id*. at 60-61.

Plaintiff's first argument before the Court is that the wording of the ALJ's hypothetical question leads to a flawed response by the VE because the residual functional capacity identified by the ALJ in his opinion specifically precludes "repetitive hand motions which involved the wrists," (tr. at 25), while Plaintiff contends the ALJ's hypothetical question allows such movement. (Pleading No. 10 at 9-11.) The Court disagrees.

As noted above, the ALJ included the following limitation in his hypothetical question to the VE: "[h]e has bimanual dexterity but he should not do repetitive jobs that require *constant* bimanual dexterity throughout the workday. But he can grasp and handle objects periodically."(Tr. at 61.)(emphasis added). *See also The Dictionary of Occupational Titles ("DOT")*. Under the *DOT*, "constant" hand use is defined as occurring more than 2/3 of the time.[1] *DOT Appendix C*. Therefore, the ALJ clearly stated in his hypothetical question that Plaintiff's use of his hands was somewhat, but not extremely limited, so as to avoid aggravating Plaintiff's CTS.

---

[1] The *DOT* does not define "repetitive," but the Court finds, when viewed in the context of the ALJ's entire decision and the transcript, that the ALJ uses the terms "repetitive" and "constant" as synonyms in this case. However, the Court agrees with Plaintiff that the ALJ could be clearer in his choice of technically significant terms in the future.

The VE identified two jobs which Plaintiff could perform: Electrical Worker, DOT 726.687-010, and Inspector, Hand Packager 559.687-074. (Tr. at 27.) Both jobs require *"frequent"* hand use, defined by the *DOT* as occurring 1/3 to 2/3 of the time. *DOT Appendix C*. As "frequent" hand and wrist use is clearly less demanding than "constant" use, as such terms are defined in the *DOT*, the Court finds that Plaintiff retains the residual functional capacity to perform the manipulative limitations of the jobs identified by the VE.

Plaintiff's next argument before the Court is that the ALJ's hypothetical question to the VE lacked sufficient specificity regarding the frequency with which Plaintiff was required to alternate between sitting and standing, as required by Social Security Ruling 96-9p, *Policy Interpretation Ruling Titles II and XVI: Determining Capability to do other Work-Implications of a Residual Functional Capacity for Less Than a Full Range of **Sedentary** Work* ("SSR 96-9p")(emphasis added). (Pleading No. 15 at 10.) The Court finds Plaintiff's position to be without merit.

The ALJ found in his opinion that Plaintiff can perform *light work*, so long as he is provided with a sit/stand option; he does not have to engage in repetitive hand motions involving repetitive movements of the wrist; is limited to simple, routine, repetitive tasks; and is not required to interact with the public. (Tr. at 25-26.) Social Security Ruling 96-9p, on the other hand, discusses the implications when the occupational base for *sedentary* work

is eroded.[2] Therefore, SSR 96-9p is inapplicable in this case. *See Gratts v. Halter*, No. Civ. A. 400CV696BE, 2001 WL 215936, at *7 n.6 (N.D. Tex. Mar. 5, 2001)(SSR 96-9p inapplicable where the plaintiff was found capable of less than a full range of light work); *see also Randolph v. Apfel*, No. Civ. A. 98-0673-AH*G, 2000 WL 206637, at *13 (S.D. Ala. Feb. 11, 2000)(SSR 96-9p inapplicable where claimant was found capable of light work). Accordingly, the Court finds that the ALJ's finding is supported by substantial evidence.

Plaintiff's next argument is that the ALJ failed to properly cite examples of jobs Plaintiff can perform and the incidence of such work in the national economy. (Pleading No.10 at 14-15.) At the hearing, the ALJ asked the VE to identify jobs which could be performed by a "younger individual" with less than a tenth grade education and Plaintiff's past relevant work history. (Tr. at 60.) The ALJ further noted that the individual in question would be able to lift objects of up to 20 pounds and would be able to alternate between sitting and standing "from time to time." *Id*. at 60-61. Finally, the ALJ noted that the individual in question would have some limitations on his bimanual dexterity, as described in detail by the ALJ and stated verbatim elsewhere in this opinion, should be limited to simple routine, repetitive work, and should not be required to interact with the general public. *Id.* The VE replied that such an individual would be able to perform the job of electronics worker, DOT 726.687-010, with 280,000 jobs in the national economy and 7,000 such jobs in the North

---

[2] Specifically, SSR 96-9p notes, "[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of *unskilled sedentary work* will be eroded." *Id.* at *7 (emphasis added).

Case 1:04-cv-00478-JAB   Document 13   Filed 06/22/05   Page 10 of 14

Carolina economy. *Id.* The VE testified that a hypothetical individual meeting Plaintiff's profile would also be able to perform the job of inspector and hand packager, DOT 559.687-074, with 200,000 jobs in the national economy and 6,000 such jobs in the North Carolina economy. *Id.*

Plaintiff contends that the job numbers identified by the VE are faulty for two reasons. First, Plaintiff contends that the number of electronics worker jobs and inspector and hand packager jobs cited by the VE are inaccurate because the VE does not account for Plaintiff's need for a sit-stand limitation. (Pleading No. 10 at 14-15.) This is clearly not the case. In his testimony, the VE clearly states that he is "looking at reduced numbers for sit, stand option" in determining that number of jobs available in the national and state economy. (Tr. at 61.) Later, the VE testified that his vocational data is consistent with the data in the *DOT*, "except for the sit, stand option part, which, of course, not considered by the *DOT*. [sic] And that comes from my observation of jobs and job analysis."[3]  *Id*. at 63. Accordingly, the Court

---

[3] Social Security Ruling 00-4p, *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions* (SSR 00-4p) states that: "The *DOT* lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the *DOT*." In this case, the VE testified, based on his professional experience, about the requirements of a subset of jobs included in larger job descriptions in the *Dictionary of Occupational Titles*. The ALJ's decision to accept the testimony of the VE on this point is not in error. *See Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994)(internal citations omitted):

> The credibility of the [VE's] testimony was fully probed at the hearing, and credibility was properly within the province of the ALJ to determine. The ALJ's credibility findings are subject to substantial deference on review, and we cannot say the ALJ clearly erred by accepting what the expert said.

*Id.* at 795.

finds that the ALJ's analysis on this point is without error.

Additionally, Plaintiff contends that the number of jobs identified by the VE would be reduced by some unspecified amount because Plaintiff has less than a high school education. (Pleading No. 10 at 15-16.) The Court disagrees. The ALJ clearly stated in his hypothetical question that the VE should consider a hypothetical individual who has less than a high school education, can only perform simple, routine, repetitive work, and who should be limited to light, unskilled work. (Tr. at 60-61.)[4] Considering all of these limitations, the VE provided the electronics worker job and the inspector and hand packager job, with their corresponding state and national numbers. Plaintiff points to a general statement by the VE that "having a high school diploma is always helpful but it wouldn't necessarily, completely preclude those jobs." (Tr. at 62.) The Court agrees with Plaintiff this portion of the VE's testimony is confusing. *See, e.g.*, tr. at 62. Nevertheless, the VE clearly provided specific jobs which Plaintiff could perform in response to a hypothetical question detailing his residual functional capacity. *Id*. at 60-61. The VE also detailed the incidence of such jobs in the national and

---

[4] Unskilled work has "simple" duties which need "little or no judgment" and which can be learned in a short time frame. 20 C.F.R. § 416.968(a) (2004). In this case, both of the jobs identified by the ALJ are classified as "light," and are classified by the *Dictionary of Occupational Titles* as having a Specific Vocational Preparation ("SVP") level 2. Specific Vocational Preparation is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *http://www.oalj.dol.gov/public/ dot/refrnc/dotappc.htm*. A job classified as SVP Level 2 requires "[a]nything beyond short demonstration up to and including 1 month."

-12-

Case 1:04-cv-00478-JAB   Document 13   Filed 06/22/05   Page 12 of 14

state economies. *Id.* at 61.[5] Accordingly, the Court finds that the jobs identified by the VE in his testimony and cited by the ALJ in his opinion were supported by substantial evidence.

Plaintiff's final argument before this Court is that the ALJ failed to properly resolve a discrepancy between the VE's testimony and the *DOT*. If the testimony of a vocational expert appears to conflict with the *DOT*, SSR 00-04 requires the ALJ to "elicit a reasonable explanation for the apparent conflict." *Burns v. Barnhart*, 312 F.3d 113, 127 (3rd Cir. 2002). In this case, Plaintiff argues that the ALJ told the VE to consider a hypothetical individual who "has bimanual dexterity but he should not do repetitive jobs that require *constant* bimanual dexterity throughout the workday. But he can grasp and handle objects, periodically." (Tr. at 61)(emphasis added). Plaintiff claims that the VE's testimony that he could perform the jobs of electronics worker and inspector and hand packager conflicts with the *DOT*, because the *DOT* states that both jobs require frequent manual dexterity, frequent fingering, and frequent handling. (Pleading No. 10 at 17, *citing* tr. at 60-61.) This claim is without merit. As the Court has discussed at length above, the ALJ specifically found that Plaintiff's history of hand injuries prevent him from performing "constant" hand motions –

---

[5] It seems to the Court that Plaintiff is arguing that the VE is required to find a job for which Plaintiff is the ideal candidate. Clearly this suggestion is neither meritorious nor feasible. Taken to the extreme, Plaintiff's argument would allow nearly all claimants to point to a hypothetical individual with more education, training, or experience and claim, as Plaintiff appears to be claiming, that he should not be considered a candidate for that job because a better candidate may exist. Under the Regulations, the Commissioner is required to identify jobs "having requirements [Plaintiff is] able to meet with [his] physical or mental abilities and vocational qualifications," not jobs for which Plaintiff is the superior candidate. 20 C.F.R. § 404.1566(3)(b) (2004).

those defined by the *DOT* as occurring more than 2/3 of the time. However, this Court has already held, giving the ALJ the benefit of the substantial evidence standard, that Plaintiff retains the residual functional capacity to perform "frequent" hand motions – defined in the *DOT* as occurring 1/3 to 2/3 of the time. Accordingly, the Court finds that the ALJ's step five determinations were not in error.

## Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment [Pleading No. 9] be denied, that the Commissioner's motion for judgment on the pleadings [Pleading No. 11] be granted, and that the decision of the Commissioner be affirmed.

                                        /s/ P. Trevor Sharp
                                   United States Magistrate Judge

Date: June 22, 2005